Elroy James SPANIHEL

v.

Robert E. (Bob) TURRENTINE, Individually and In his Capacity as County Clerk of Harris County, et al.

Civ. A. No. 71–H–1340.

United States District Court, S. D. Texas, Houston Division.

Jan. 11, 1972.

Dixie, Wolf & Hall (Eric H. Nelson), Houston, Tex., for plaintiff.

Joe Resweber, County Atty., Harris County, Tex., Billy E. Lee,. Asst. County Atty., for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Plaintiff, a former employee of the County Clerk's office of Harris County, brings this action, under 42 U.S.C. §§ 1983 and 1985, against the County Clerk and four of his deputies for an injunction compelling the Clerk to reinstate Plaintiff to his former employment; restraining Defendants from harassing Plaintiff or employing disciplinary measures in order to inhibit him in the exercise of his right of free expression; and requiring the County Clerk to compensate Plaintiff for the amount of his lost wages from the date of his dismissal.

In a separate cause of action, Plaintiff seeks relief, under Rule 23(a) (2), Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated, i. e., all other deputy county clerks of Harris County. Jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 2201. The case is presently before the Court on the individual motions of each Defendant under Rule 12(b) (6), Federal Rules of Civil Procedure, to dismiss for failure to state a claim.

For purposes of the motion, the Court assumes, arguendo, the validity of Plaintiff's version of the facts of this case. The Court wishes to make clear, however, that resolution of this motion in behalf of either party in no way indicates the pre-disposition of any issue of contested fact.

Plaintiff entered full-time employment as a deputy county clerk in January, 1969. His work record prior to October 13, 1971, appears to have been satisfactory: Plaintiff qualified for successive merit salary increases, and he was never the subject of disciplinary action or official reprimand. Although Plaintiff's hair grew substantially longer during his tenure, he was assured by the Clerk that his hair style was acceptable.

On October 13, 1971, Plaintiff and two other employees of the Clerk's office wore black arm bands to work. All three were told by the Clerk that such form of protest was contrary to the policies of the Clerk's office, and all three removed the arm bands at the Clerk's request. On the following day, October 14, a confrontation outside the Harris County Courthouse between Houston policemen and several black militants, inspired Plaintiff to relate his views regarding Negroes to Defendant Allison. On October 15, Plaintiff and two other employees were summoned to the office of the Clerk. Defendant Turrentine informed them that they were discharged, and gave Plaintiff the following reasons: (1) Plaintiff had attempted to help the Black Panthers fight the police on the previous day; (2) Plaintiff be-

lieved in the forcible overthrow of the Government. Defendant Rodeheaver subsequently explained to Plaintiff that he was dismissed for the additional reasons that (1) some employees were critical of his hair style; and (2) Plaintiff had attended a peace rally at City Hall on the evening of October 13, 1971. Defendant Turrentine later stated to Plaintiff's counsel that the reason for Plaintiff's discharge was the Clerk's "loss of confidence" in Plaintiff.

Plaintiff asserts that defendant Turrentine discharged him because (1) Plaintiff chose to wear a black arm band to work; and (2) Plaintiff's views regarding Negroes disturbed and offended Defendant Allison. A public officer, Plaintiff contends, acts in violation of 42 U.S.C. § 1983 when he discharges an employee merely for exercising his constitutional right of free expression. Furthermore, the incident serves to inhibit other employees similarly situated in the free exercise of protected first amendment rights.

Plaintiff alleges that he has sustained irreparable injury as a result of his discharge. In addition to the loss of a substantial sum of money, Plaintiff also confronts the prospect of a future career indefinitely beclouded by a blot on his otherwise satisfactory employment record. Plaintiff seeks relief in the form of reinstatement, payment of back wages, and an injunction to preclude Defendants' further interference with Plaintiff's protected first amendment rights.

Plaintiff bases a second cause of action upon an alleged conspiracy among Defendants to punish Plaintiff for the exercise of his first amendment rights, to eliminate Plaintiff's public employment, and to inhibit free expression by those members of the class which Plaintiff here seeks to represent, all in violation of 42 U.S.C. § 1985.

Plaintiff asserts a third cause of action under the class action provisions of Rule 23, Federal Rules of Civil Procedure, and declares that he is an adequate representative of the interests of the class of deputy clerks of Harris County. In support of these allegations, Plaintiff argues that, by denying him a statement of the charges against him and the opportunity to confront his accusers and to present witnesses in his behalf, defendants have embarked upon a wholesale program to frustrate the exercise of first amendment rights by employees of the County Clerk's office. Furthermore, whatever standards exist regarding such employees' right to political expression are unconstitutionally vague and overbroad. Plaintiff seeks relief for the class in the form of an injunction prohibiting Defendants from imposing any sanctions against class members for the exercise of rights protected by the First Amendment.

■ The Court notes first that a motion to dismiss under Rule 12(b) (6) is little favored:

"Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate." International Erectors, Inc. v. Wilhoit Steel Erectors and Rental Serv., 400 F.2d 465, 471 (C.A. 5, 1968),

particularly in civil rights cases, Mizell v. No. Broward Hospital Dist., 392 F.2d 580 (C.A. 5, 1968), Robertson v. Johnston, 376 F.2d 43 (C.A. 5, 1967), Carmack v. Gibson, 363 F.2d 862 (C.A. 5, 1966), Due v. Tallahassee Theatres, Inc., 333 F.2d 630 (C.A. 5, 1964). The usual test is that a Rule 12(b) (6) motion should be denied

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ In the case at bar, there is lacking that near certainty prescribed in Conley v. Gibson. Although it is settled that there is no constitutionally protected right to government employment, Cafeteria and Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961),

the law is also clear that an individual, in assuming public employment, retains all the rights and protections otherwise afforded him by the United States Constitution. Orr v. Thorpe, 427 F.2d 1129 (C.A. 5, 1970). One such right is "that of the individual to be free from arbitrary and unreasonable conduct on the part of the government." Calhoun v. Doster, 324 F.Supp. 736, 743 (M.D.Ala., 1971).

In Orr v. Trinter, 444 F.2d 128 (C.A. 6, 1971), the Court, although holding that the failure of a board of education to state its reason or hold a hearing in refusing to renew the employment contract of a non-tenured public school teacher was not so arbitrary as to violate the due process clause of the fourteenth amendment, made clear that dismissal of the action would have been improper if the complaining teacher had alleged that he was dismissed as a result of exercising his right of free speech:

"&ast; &ast; &ast; it is no longer open to debate that plaintiff would be entitled to relief if the board had refused to rehire him because he had exercised his rights as guaranteed by the free speech clause of the First Amendment." Orr v. Trinter, *supra*, at 134.

In Pickering v. Board of Education of Township High School, District 205, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), a public school teacher wrote a letter to the editor of a local newspaper criticizing the board of education and the superintendent of schools. Subsequently, the board ruled that publication of the letter was detrimental to the efficient operation and administration of the schools of the district and that the interests of the school required the teacher's dismissal. Holding in favor of the ousted teacher, the Supreme Court found that in cases where

"the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher, we conclude that it is necessary to regard the teacher as the member of the general public he seeks to be." *Pickering*, Supra at 574, 88 S.Ct. at 1738.

The Court agreed that the State has a significant interest in regulating the speech of its employees, but cautioned that the proper course was to attempt

"to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, at 568, 88 S.Ct. at 1734.

 In the case at bar, a trial on the merits must be deemed essential to the achievement of this balancing of interests. Accordingly, the motions of each defendant to dismiss pursuant to Rule 12(b) (6), for failure to state a claim on which relief can be granted, are hereby denied.